WILSON et al. v. THOMPSON. (No. 1316.)

(Court of Civil Appeals of Texas. Amarillo. March 27, 1918.)

1. BILLS AND NOTES ☞245, 437—LIABILITY OF INDORSER.

Where J. gave T., as payment or security for a note he owed him, a note payable by W. and M. to J., J. did not become principal obligor on the W. and M. note, by indorsing it, or afterwards signing a renewal in order to get an extension of time, but was only a surety thereon, whose discharge by T. did not affect the liability of W. and M. to T.

2. JUSTICES OF THE PEACE ☞44(8) — JURISDICTION.

In action on note in justice court, the court had jurisdiction to enter judgment for the note and accumulated interest as provided in the note, even if the amount exceeded $200; the principal of the note being $100.

Appeal from Scurry County Court; W. S. Adamson, Judge.

Action by W. T. Thompson against J. F. Wilson and another. From a judgment for plaintiff, defendants appeal. Affirmed.

See, also, 186 S. W. 773.

Fritz R. Smith and J. L. Spiller, both of Snyder, for appellants. M. E. Rosser, of Snyder, for appellee.

HUFF, C. J. Thompson, appellee, instituted suit in the justice court, December 27, 1911, on a note for $139.64, due November 15, 1912, bearing interest from date at 10 per cent., and providing for 10 per cent. attorney's fees, executed by J. F. Wilson and W. R. McClanahan. The appellants, defendants below, answered jointly, setting up that the note was a renewal note of a note dated January 7, 1910, signed by the appellants and one T. A. Jackson; that the appellants were sureties, and that Jackson was the principal, on the note of which the one sued upon was the renewal; and that the note sued on was signed by them under the impression and with the distinct understanding that Jackson was to sign the note, but that appellee, Thompson, failed to have Jackson sign the same, but expressly released him from the note without the knowledge or consent of appellants, and thereby released them. The trial court filed the following findings of fact:

"T. A. Jackson owed W. T. Thompson $100, to secure the payment of which he held a mortgage on Jackson's team of horses. T. A. Jackson was the owner and holder of one promissory note for the principal sum of $100, signed by H. A. Carter, W. R. McClanahan, and J. F. Wilson, and payable to the order of T. A. Jackson. T. A. Jackson gave W. T. Thompson this Carter note for $100 as payment of the debt Jackson owed Thompson; and indorsed said Carter note in blank. When the Carter note fell due, Carter was gone, and McClanahan and Wilson agreed to give Thompson another note in renewal and leave Carter off. This note was at the bank, and when the cashier made out the new note he asked them to get Jackson and have him sign the renewal note. Jackson signed the note, and in so doing signed the top line. When this first renewal note fell due, another note was given in renewal of it, and all parties signed as before. When this second renewal note fell due, there was another note given to renew it; Jackson being left off. When this third renewal note was presented for payment, McClanahan and Wilson refused to pay same, because Jackson's name had been left off without their consent. There was no agreement between Thompson and Jackson that he was to take the place of Carter on the renewal note, and Jackson testified that he did not know he was to sign the renewal note until McClanahan and Wilson came to the lumber yard after him to sign it. There was no agreement between McClanahan, Wilson, and Jackson that Jackson was to become principal in the place of Carter on the renewal note, and there was no consideration given by McClanahan and Wilson to Jackson to become principal in Carter's place."

[1] It will be borne in mind, from the facts above stated, that the debt sued on for which the original note and the several renewals were executed, was not a debt owing by Jackson, but was Carter's debt, to which McClanahan and Wilson were sureties. The indorsement by Jackson to Thompson transferred the debt to Thompson, who as payee stood in the shoes of Jackson, who had the right to collect or sue on the note, whether he owned it absolutely or whether he held it as collateral security to the debt which Jack-

son owed him. Jackson was only liable as indorser, and that liability was secondary to that of the sureties, and as to the indorser they were principals, and he, by his indorsement, impliedly guaranteed they would pay the debt, for which he would not be liable until the payee in the note had exhausted his remedy against the makers of the note. The fact that Jackson afterwards signed the renewal note did .not change the relation of the parties and make Jackson the principal obligor, unless it was upon a new consideration to him and it was so agreed. The evidence nowhere indicates that Jackson gave the makers of the Carter note the debt, or that he released them from its payment, and even if the title to the debt was reserved in him, and the only right of Thompson was that of a pledgee, that would not affect their liability to pay the debt. There is no evidence that the makers of the Carter note gave anything to Jackson to release them from a debt which they owed. The mere fact that Jackson owed a debt to Thompson, evidenced by a different note, did not evidence the fact that he owed the debt, which was in fact due him by Carter and others. It yet remained the debt of the parties who originally made the note in so far as he was concerned. If he had been forced to pay the debt to Thompson, they would have been liable to Jackson, and he could have forced them to pay it. There was no right of contribution existing between Jackson and the original makers and obligors on the note; in other words, they were not cosureties. "To constitute the relation of cosurety between indorsers, there must be an agreement to that effect between them. * * * It has been held that such an agreement, made between such indorsers after they have signed and without any new consideration, is not binding. * * * It has been held that an accommodation indorser of a note is not, in the absence of an agreement to that effect, liable as a cosurety with the surety who signed the note on its face as maker. * * * Prima facie an indorser of a promissory note is not a cosurety with the surety who signed the note as maker, but it may be shown by parol evidence that they were in fact cosureties." 1 Brandt on Suretyship, §§ 286, 291. It is now the settled rule that the true relation of the parties on a note may be shown by parol evidence. Id. § 287.

When McClanahan and Wilson went to Thompson and requested him to release Carter and permit them to renew the note, they became the principal obligors and as to Thompson were primarily liable thereon. The fact that the cashier required Jackson to sign the note, and that he did so, only rendered him a surety for a debt to Thompson, which the original makers owed him. It was not a payment of that debt, or the making of a new, but only a new evidence of the same debt, with Jackson as surety. If,

therefore, the creditor, Thompson, released Jackson, surety, the principals, McClanahan and Wilson, were not thereby released. 1 Brandt on Suretyship, § 171; Bridges v. Phillips, 17 Tex. 128; McIlhenney v. Blum, 68 Tex. 197, 4 S. W. 367. It does not occur to us because on a different note Jackson was liable to Thompson for the debt so evidenced and that he discharged that debt, or even secured it by a debt which was owing him by Carter, McClanahan, and Wilson, that he could or would become principal obligor on the debt originally due him simply because he indorsed the note and afterwards signed a renewal in order to get an extension of time. This act on this part would be mere accommodation to the makers of the original note. It seems to us the relation of principal and surety, or indorser, as to that debt, would subsist as to Jackson on the one part and McClanahan and Wilson on the other, and in law they were not cosureties with the right of contribution existing between them. The right of contribution existing between joint obligors must be the fundamental reason of the rule that the release of one is the release of all; but, as to the principal, where the surety is released the reason ceases and the rule itself must cease. The principal is liable for the entire debt, whether the surety pays it or not. If the surety does not pay it he is bound to the creditor, and if the surety does pay he is bound to remunerate the surety. Hence the liability of the principal is made neither more nor less by the release of the surety. This certainly was not the joint debt of Jackson, Carter, and others, but originally it was the debt due Jackson, which by transfer became the debt of Thompson, and thereafter, as an accommodation to the original makers, he became simply a surety, and not the principal obligor. It was the duty of the original makers, who owed the debt, to pay it and release Jackson, and the fact that Thompson released him did not affect the liability of the original makers.

[2] We think the trial court properly entered the judgment for the principal of the debt and accumulated interest up to the time of the rendition of the judgment, even if the amount exceeded $200. The note was for less than $200, exclusive of interest. Interest was provided for in the note. The statute gave jurisdiction for the amount, excluding interest. The fact that the accumulating interest gave judgment for an amount in excess of $200 did not deprive the court of jurisdiction to render judgment for the sum of the principal and accrued interest. Hawkins, Appellate Civ. Jurisdiction, § 37, p. 131, says:

"Our trial courts may render judgment for an amount in excess of that named as the maximum amount of which they have jurisdiction when the excess is made up wholly of interest eo nomine. * * * Simply stated, the rule is that a court may render judgment for such an

amount as it has jurisdiction to consider, and for no more."

See Smith v. Ridley, 30 Tex. Civ. App. 158, 70 S. W. 235; Western Union Tel. Co. v. Garner, 83 S. W. 433.

The judgment will be affirmed.